# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TRENDSETTER HR, LLC, et al. | § | |
| | § | |
| Debtor. | § | (Bankr. Case No. 16-34457-sgj11) |
| | § | |
| | § | |
| TRENDSETTER HR, LLC, et al., | § | |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-2300-S |
| | § | |
| ZURICH AMERICAN INSURANCE | § | |
| COMPANY, et al., | § | |
| | § | |
| Appellees. | § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Trendsetter HR, LLC, Trend Personnel Services, Inc., and TSL Staff Leasing Inc.'s (collectively, "Trend") Appeal of the Findings of Fact, Conclusions of Law and Order on Debtors' Objection to Zurich's Proofs of Claim, signed on August 15, 2017, by the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") granting Zurich American Insurance Company ("Zurich") an allowed unsecured claim against Trend in the aggregate amount of $7,603,017 (after permitting setoff of its $310,413 loss fund). Having considered the relevant pleadings, the Court finds that the Bankruptcy Court's decision should be affirmed.[1]

---

[1] On December 20, 2018, this Court presided over a criminal sentencing hearing in *United States v. Jamieson*, Case No. 3:18-CR-00253-S(01). By an extraordinary coincidence, the owner and president of Trendsetter HR delivered a victim impact statement at the hearing. The issues in the criminal matter and the instant bankruptcy appeal are completely unrelated. Though the Court considered the victim impact statement in the criminal matter, it did not consider the victim impact statement in rendering this decision.

## I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Sidney A. Fitzwater to the docket of this Court on March 8, 2018.

Trend is in the business of providing staffing solutions and Professional Employment Organization services to clients across the country. As such, Trend requires workers' compensation insurance both for its own employees and for its co-employees. Zurich provided workers' compensation insurance to Trend for four consecutive years, between May 29, 2011, and June 1, 2015. Zurich provided this insurance pursuant to policies and side agreements. Pursuant to the polices, Zurich would pay claims in the first instance and then look to Trend for reimbursement. Trend was also required to fund reserves and loss funds, which Zurich would hold and could apply to future losses when and as they occurred.

Trend stopped paying Zurich in March 2015 and did not renew the policies in May 2015. Extensive litigation and arbitration ensued. An American Arbitration Association arbitration panel ordered Trend to post $4.5 million in pre-hearing security. Trend was unable to post this amount of money and sought Chapter 11 protection. On November 17, 2016, Trend commenced its bankruptcy case before the Bankruptcy Court.

On January 25, 2017, Zurich filed claims in the amount of $11,783,918.68 for unpaid prepetition invoices and future damages. Trend objected, and the Bankruptcy Court tried the claims in June 2017. On May 25, 2017, Zurich amended its claims downward to $9,045,846.68.[2] The amended claims became the operative claims for trial purposes.

---

[2] Zurich filed identical claims and identical amended claims against each of the three Debtors.

The Bankruptcy Court tried two issues: (i) the size of Zurich's liquidated claim; and (ii) the size of Zurich's estimated, future claim. Both parties disputed the size of the claims, and Trend disputed any liability for medical bill review fees.[3] The Bankruptcy Court issued its Findings of Fact, Conclusions of Law and Order on Debtors' Objection to Zurich's Proof of Claim on August 15, 2017. The Bankruptcy Court agreed with Zurich as to the liquidated amount of its claims ($5,700,719) and agreed with Trend as to the estimated amount of Zurich's future claims ($1,691,000). The Bankruptcy Court rejected Trend's arguments regarding the 25% medical bill review fees and concluded that the voluntary payment doctrine applied.

Ultimately, the Bankruptcy Court liquidated Zurich's present and future claims to a combined amount of $7,913,430. Since Zurich was holding loss funds of $310,413, the Bankruptcy Court applied the setoff and allowed the final unsecured claim at $7,603,017.

On August 29, 2017, Trend filed its Notice of Appeal [ECF No. 1]. On December 1, 2017, Trend filed its Appellant's Brief and designated the following issues for appeal:

1. Did the Bankruptcy Court err in holding that Zurich is entitled to a claim for unpaid invoices in the amount of $5,700,719 in accordance with the parties' contracts, where such amount includes reserves and loss funds for future losses, when the Bankruptcy Court also separately held that Zurich is entitled to a claim for projected future losses against Trend in the amount of $1,691,000, thus awarding Zurich double the amount for its future losses?

2. Did the Bankruptcy Court err in allowing Zurich any claim for 25% of medical bill review "savings" when: (i) the relevant contracts do not provide for the same; (ii) there is no written, signed contract providing for the same; (iii) the Statute of Frauds prevents

---

[3] Zurich charged Trend a fee of 25% of any savings achieved by Zurich's provision of medical bill review services.

3

enforcement of the same; and (iv) there are no "savings" under the terms of any governing contract and/or industry standards, and in light of Zurich rejecting otherwise already unenforceable claims?

3. Did the Bankruptcy Court err in denying the Debtors' defense to said 25% of medical bill review "savings" fees as unconscionable and as against public policy?

On March 7, 2018, Zurich filed its Appellee's Brief [ECF No. 22]. Trend filed a reply on March 21, 2018 [ECF No. 26].

## II. LEGAL STANDARD

A district court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1). A bankruptcy court's "[f]indings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo*." *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 346 (5th Cir. 2008). A finding of fact is clearly erroneous when "the reviewing court upon examination of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Justiss Oil Co., Inc. v. Kerr-McGee Ref. Corp.*, 75 F.3d 1057, 1062 (5th Cir. 1996) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

"[I]n a bankruptcy appeal, a district court cannot consider issues and arguments that were not initially presented to the bankruptcy court." *Freewood Grp., LLC v. Park Place Motorcars, Ltd.*, Civ. A. No. 3:17-CV-2435-L, 2018 WL 4002475, at *10 (N.D. Tex. Aug. 22, 2018) (citations omitted). "To preserve an argument, it 'must be raised to such a degree that the trial court may rule on it.'" *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008) (quoting *In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993)).

## III. ANALYSIS

### A. *Did the Bankruptcy Court Err in Awarding Claims for Unpaid Invoices and Projected Future Losses?*

Trend argues that the Bankruptcy Court erred by "essentially doubl[ing] its express futures award." Br. of Appellants 34. Trend contends that the Bankruptcy Court "double dipp[ed]" by "awarding Zurich both unpaid deposits that were to be used towards future claims, and the future claims themselves." *Id.* at 11-12. While findings of fact ordinarily are reviewed under the clearly erroneous standard, estimates of unliquidated claim amounts accelerated by a bankruptcy filing are reviewed under an abuse of discretion standard. *In re Brints Cotton Mktg., Inc.*, 737 F.2d 1338, 1341 (5th Cir. 1984). This Court finds no clear error or abuse of discretion. To the extent that Trend contests the Bankruptcy Court's legal conclusions, this Court has conducted a de novo review of the relevant conclusions. This Court finds that the Bankruptcy Court's legal conclusions are compelled by the factual findings. Therefore, the Court affirms the decision below for the reasons stated by the Bankruptcy Court in its Findings of Fact and Conclusions of Law.

### B. *Did the Bankruptcy Court Err in Awarding Zurich Medical Bill Review Fees?*

Next, Trend argues that the Bankruptcy Court erred in allowing Zurich's claim for the medical bill review fees[4] because the relevant contracts do not provide for such fees, there is no written, signed contract providing for such fees, the Statute of Frauds applies, and there were no savings. Trend also argues that the Bankruptcy Court erred in determining that the voluntary payment doctrine barred Trend from seeking relief from the medical bill review fees.

---

[4] While Trend refers to the fees charged as "medical bill review fees," Zurich notes that the percentage was based on total savings from all medical cost containment services. Br. of Appellees 49. This distinction does not impact the Court's analysis.

5

This Court finds that the Bankruptcy Court did not commit clear error in finding that the parties had an enforceable contract requiring Trend to pay the savings-based medical bill review fees. To the extent that Trend challenges the Bankruptcy Court's legal conclusions, this Court, after conducting a de novo review, affirms those conclusions. "[O]ne cannot accept the benefits of a contract made by himself or his agent and then attempt to prevent the other party to the contract from showing what the agreement was or from enforcing the terms of the agreement." *Nat'l Bank & Trust Co. of Norwich v. Woods*, 493 N.Y.S.2d 76, 77-78 (Sup. Ct. 1985) (citation omitted). The Bankruptcy Court found that Trend agreed to the fees and that the bill review service "provided value to Trend." R. 15. Therefore, Trend cannot avoid the medical bill review fees now by arguing that the Statute of Frauds applies or that the parties did not have an enforceable contract.

Further, "[t]he [voluntary payment] doctrine bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156 (N.Y. 2003) (citation omitted). In its factual findings, the Bankruptcy Court determined that Trend paid the fees and that various reports, agreements, and other communications detailed the savings and the fees being charged. The Court finds no clear error in these factual findings. In its conclusions of law, the Bankruptcy Court found that Trend had full knowledge of the relevant facts or law. After conducting a de novo review, this Court agrees that there is no evidence of a mistake of material fact or law. Therefore, the Court finds that the voluntary payment doctrine applies in this case.

For these reasons, and for all of the reasons stated by the Bankruptcy Court in its Findings of Fact and Conclusions of Law, this Court affirms the decision below.

## C. *Did the Bankruptcy Court Err in Rejecting Trend's Defense to Medical Bill Review Fees?*

Finally, Trend argues that the Bankruptcy Court erred in holding that the 25% medical bill review fees were not unconscionable. This Court reviews the facts underlying the unconscionability determination for clear error and reviews the Bankruptcy Court's legal conclusion that the fees were not unconscionable de novo. *See Sablosky v. Edward S. Gordon Co.*, 535 N.E.2d 643, 647 (N.Y. 1989) ("[W]hether a contract or clause is unconscionable is to be decided by the court . . . .").

Under New York law, unconscionable contracts are unenforceable. *See Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988). An unconscionable contract is a contract that "is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be [unenforceable] according to its literal terms." *Mandel v. Liebman*, 100 N.E.2d 149, 152 (N.Y. 1951) (citing 1 Corbin on Contracts § 128 at 400). "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made . . . ." *Gillman*, 534 N.E.2d at 828. When analyzing procedural unconscionability, courts review the contract formation process and determine whether there was an "absence of meaningful choice on the part of one of the parties." *Id.* (citations omitted). When considering substantive unconscionability, courts analyze "the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Id.* at 829.

Trend contends that "the evidence clearly demonstrate[s] both procedural and substantive unconscionability with respect to Zurich's 25% fee for writing medical bills down to the state mandated fee schedule and related regulations." Br. of Appellants 54. Trend makes ten arguments

7

in support of this contention: (1) the agreement is not clear that Zurich would be charging the fee for writing down unenforceable bills; (2) there was some level of deception by Zurich; (3) there was disparity of bargaining power; (4) the 25% fee is not industry standard, was not discussed, was not understood by Trend, and is not something Trend had reasonable suspicion would be charged; (5) Zurich is already compensated for medical bill review; (6) Zurich would write the bills to fee schedule anyway to protect itself; (7) Trend received no value for fee schedule issues; (8) Zurich conducts medical bill review at no (or miniscule) incremental cost; (9) Zurich makes a profit on these services; and (10) Zurich's total charges for these services constitute a hidden profit center. Trend also argues that the Bankruptcy Court "essentially allowed Zurich to profit from illegal billings" because the bills Zurich rejected were illegal. Br. of Appellants 55.

In its findings of fact, the Bankruptcy Court noted that the medical cost containment process, including medical bill review, is complex, Zurich expends significant effort and expense in conducting medical bill review, Zurich did not have a "far better knowledge of workers' compensation claims billing" than Trend, Trend was intimately involved in overseeing its insurance programs, and there is nothing about the policies, agreements, proposals, final confirmations, or Trend's business that could support a claim of substantive unconscionability. R. 16-17. In other findings of fact relevant to Trend's arguments, the Bankruptcy Court found that Zurich's practices are consistent with industry custom and practice, Zurich charges nothing unless savings are achieved, and the use of contingency fees provides value to Zurich's clients. *Id.* at 14-15, 18. The Court has examined the evidence and concludes that these findings are not clearly erroneous.

This Court finds that applying these findings of fact to the unconscionability analysis compels the conclusion that the medical bill review fees are not unconscionable. As to procedural

unconscionability, the Court finds no absence of meaningful choice on the part of Trend. Trend is a professional employer organization, and its business is largely focused on providing Zurich's workers' compensation insurance to Trend's clients. Thus, Trend was experienced in this field, and its claims that the terms were deceptive are uncompelling. As to substantive unconscionability, the Court finds that the fee-related terms in the various agreements are not unreasonably favorable to Zurich. The terms are consistent with industry standards and reflect the amount of effort Zurich expends, and the amount of value it delivers, in providing medical bill review services. Therefore, the Bankruptcy Court correctly held that the medical bill review fees are not unconscionable and, as a result, properly rejected Trend's defense to the fees.

### IV. CONCLUSION

For the foregoing reasons, the Court affirms the Bankruptcy Court's decision.

**SO ORDERED.**

SIGNED January 3, 2019.

_____
**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**